*992 The opinion of the court was delivered by
Eenner, J.
The allegations are that, while Mrs. White was driving in a buggy with three young children in the streets of Shreveport, and as she approached, in a moderate gait, the crossing of the defendant over Jordan street, a locomotive of defendant came dashing across at unusual speed without blowing whistle or ringing bell, or giving any other precautionary signal, which frightened her horse ' and caused him to run away, upsetting the vehicle and inflicting upon her the damages for which claim is made in this suit.
The defence is a general denial and a plea of contributory negligence.
It has been ruled with such frequency and uniformity as to make its iteration here merely formal, that, to sustain recovery in such a ease, it must appear from the record, first, that the defendant was guilty of negligence; second, that the party injured was guilty of no contributory negligence, i. e., negligence but for which, notwithstanding defendant’s negligence, the injury would have been avoided.
I.
The proof of negligence on the part of defendant is by no means satisfactory. As to the rate of speed, several witnesses express the opinion that the train was going at the rate of about fifteen miles an hour; but nothing is more uncertain than the estimation of rates of speed by mere unskilled observers. The engineer and other employees state positively that the rate did not exceed six miles an hour. What impresses us most, however, on this point is the uncontradicted fact that one of the employees, on seeing the accident, stepped off the train as it ran, without difficulty, and went to the lady’s assistance, which certainly indicates a moderate speed. There is no statute or ordinance prescribing any particular rate.
As to the precautionary signals, defendant’s employees positively state that bells were rung and the whistle was blown. Several witnesses who were in the vicinity state that they did not hear either bell or whistle, but none of them pretend that they were noticing or paying any attention to the matter, or had any concern to do so. Their evidence is robbed of value by the positive proof that the whistle was blown and was heard by the only person, except plaintiff, who had occasion to notice. This was a Mr. Laughlin, who was *993 riding on horseback in the sapie direction and just in advance of Mrs. White, who says that he heard the whistle of the approaching train, and, quickening the speed of his horse, rode across the track in advance of it; that after crossing he chanced to look back, and saw Mrs. White driving unconcernedly toward the track; that he stopped and called out to her and waved his hat, but failed to attract her attention; that she drove right on until she came near the track, when she stopped, and he saw a negro boy jump forward and take hold of the horse; that then the passing train intervened, and he saw no more until it had passed, when he saw the horse running away down the street. This witness is unimpeaehed, uncontradicted and entirely disinterested. We think his testimony must be taken as full proof' that the whistle was duly and timely blown. He says he did not observe whether the bell was ringing as the engine approached, because his attention was absorbed by the danger of the lady. If plaintiffs’ witnessec did not hear the whistle which was blown, they might equally have failed to hear the bell, although it was rung; and their evidence does not suffice to overthrow the positive statements of the employés that the bell was rung.
II.
We are bound to hold that Mrs. White did not exercise that degree of care and caution which the law exacts of persons approaching the crossing of a railroad track with intent to cross. She was unquestionably bound to look and listen, and to exercise care and caution to avoid the possible danger suggested by the very fact of the crossing-
Mrs. White was a resident of Shreveport, and,' as the evidence shows, in the habit of frequently driving herself about the city.
Had she been looking and listening, had her attention been on the alert, we can perceive no reason why she should not have heard the whistle of the approaching train, why she should not have heard its noise as she- approached nearer, why she should not have heard and seen the signals of danger given by Mr. Laughlin in full view across the track. Yet it appears that she heard and saw nothing, but drove recklessly forward and might have passed on the crossing itself and been run over by the train had not the negro boy called to her as she was very near it and warned her of the approaching train. She *994 then stopped and asked the boy to hold her horse, which he did ; but the frightened animal jerked away and did the injury.
It is quite evident that the lady’s attention must have been diverted and otherwise occupied, probably with the three small children which she had in the buggy with her.
While we exact great care from railroad companies in the observance of all requirements necessary to protect the public at a crossing where persons and vehicles are constantly passing, yet, as we have heretofore said, “ there is also an obligation on the part of the public to be vigilant and attentive when passing over a crossing where passing trains may be frequently expected. Deikman vs. Railroad Company, 40 An. 790; Deikman vs. Railroad Company, 42 An.; Wood’s Railway Law, pp. 1302 to 1312.
We have been disposed to give the plaintiff the benefit of a liberal construction of the evidence in support of the claim, because the evidence of the wife who suffered the injury could not be heard in the case; but, if she had been heard and had testified aceordingto the terms of the statement embodied in the bill of exceptions taken to the exclusion of her testimony, it would not have availed to alter our conclusions. Of course, we have not given any effect to her statement, but only mention this to illustrate the spirit in which we have considered the legal evidence in the case.
The bill of exceptions itself has no merit. Of course the claim for damages is a community right and could only be asserted by the husband as head and master’ of the community. ■ The prayer of the petition is fora judgment “ in favor of George A. White, the husband of Kate A. Wliite,” and the husband was heard as a witness iu the case. In a suit by the husband for a judgment in his own favor on a community claim certainly the wife can not be heard as a witness.
There are other bills which are of no moment to our conclusions in the case.
It is, therefore, adjudged and decreed that the verdict and judgment appealed from be annulled and set aside, and that there be judgment in favor of defendant rejecting the plaintiff’s demand at his cost in both courts.